CRAIG v DETROIT PUBLIC SCHOOLS CHIEF
EXECUTIVE OFFICER

Docket No. 249948. Submitted January 12, 2005, at Detroit. Decided
March 31, 2005, at 9:00 a.m.

Danny Craig and others brought an action in the Wayne Circuit
Court against the chief executive officer (CEO) of the Detroit
Public Schools, seeking a declaration that the defendant was
required to follow the Open Meetings Act (OMA), MCL 15.261 *et
seq.* The defendant had declined to renew the employment con-
tracts of approximately four hundred administrators in the Detroit
Public Schools. The plaintiffs alleged that, because the defendant
failed to follow the OMA when he acted on those contracts
pursuant to MCL 380.471a, the nonrenewal of those contracts was
void and the administrators should be reinstated. The court,
Warfield Moore, Jr., J., denied the defendant's motion for summary
disposition and granted the plaintiffs' motion for summary dispo-
sition, and awarded the plaintiffs costs and attorney fees. The
defendant appealed.

The Court of Appeals *held*:

While the former school board of the Detroit Public Schools
would have been required to follow the OMA in this matter, the
defendant acts in the place of the school board as the CEO
pursuant to MCL 380.373. As an individual acting in his official
capacity under the statute, the defendant is not a public body and
the OMA does not apply to him. Thus, the trial court erred by
granting the plaintiffs summary disposition and denying the
defendant summary disposition, and erred by granting the plain-
tiffs costs and attorney fees under the OMA.

Reversed.

SCHOOLS — CHIEF EXECUTIVE OFFICERS — OPEN MEETINGS ACT — PUBLIC BODIES.

A chief executive officer appointed by a school reform board, when
acting in his official capacity, is not a "public body" to which the
Open Meetings Act applies (MCL 15.262[a], 380.373[4], and
380.471a).

*Mark H. Cousens* for the plaintiffs.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Jerome R. Watson, Richard J. Seryak,* and *George D. Mesritz*), for the defendant.

Before: GAGE, P.J., and METER and FORT HOOD, JJ.

PER CURIAM. Defendant appeals as of right the trial court order granting plaintiffs summary disposition and denying defendant summary disposition. We reverse.

Plaintiffs are residents of the city of Detroit. Defendant, as the chief executive officer (CEO) of the Detroit Public Schools, declined to renew the contracts of approximately four hundred curriculum leaders and curriculum coordinators in the Detroit Public Schools. Many curriculum leaders and coordinators requested meetings, which defendant coordinated. The meetings were conducted at thirteen different locations simultaneously. Plaintiffs filed this complaint, seeking a declaration that defendant was required to follow the requisites of the Open Meetings Act (OMA), MCL 15.261 *et seq.*, and that by failing to do so, defendant's nonrenewal of the contracts is void. Plaintiffs also sought reinstatement with back pay for the affected individuals.

Defendant argues that the trial court erred in granting plaintiffs summary disposition because the OMA does not apply to individuals. We review de novo questions of statutory interpretation. *Shinholster v Annapolis Hosp,* 471 Mich 540, 548; 685 NW2d 275 (2004). We also review de novo a trial court's decision on a motion for summary disposition. *Rose v Nat'l Auction Group,* 466 Mich 453, 461; 646 NW2d 455 (2002).

Plaintiffs moved for summary disposition pursuant to MCR 2.116(C)(9) and (10), but the trial court did not specify the subrule under which it granted plaintiffs'

motion. The trial court did not indicate that it thought that defendant's defenses were clearly untenable as a matter of law or that no factual development could justify denying recovery for plaintiffs. Rather, the court ruled that, in the context of this case, defendant is subject to the OMA and the proper remedy is reinstatement of the administrators whose contracts were not renewed. Thus, it appears that the trial court determined that no factual dispute existed for determination at trial and granted summary disposition pursuant to subrule C(10). When reviewing a decision on a motion for summary disposition pursuant to MCR 2.116(C)(10), "we consider the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Rose, supra* at 461. Summary disposition is appropriately granted "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.*

This case involves the interpretation of the Revised School Code, MCL 380.1 *et seq.*; the OMA; and the amendments of the Revised School Code made by 1999 PA 10, sometimes referred to as the Michigan school reform act (SRA). When interpreting statutory language, courts must ascertain the legislative intent that may reasonably be inferred from the words in a statute. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). When the Legislature has unambiguously conveyed its intent, the statute speaks for itself and judicial construction is neither necessary nor permitted. Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute. Undefined words should be accorded their

plain and ordinary meanings, and dictionary definitions may be consulted in such situations. *Id.*

The Legislature is presumed to be aware of all existing statutes when enacting a new statute. *Cameron v Auto Club Ins Ass'n,* 263 Mich App 95, 98; 687 NW2d 354 (2004). Statutes that appear to conflict should be read together and reconciled, if possible. *World Book, Inc v Dep't of Treasury,* 459 Mich 403, 416; 590 NW2d 293 (1999). When two statutes lend themselves to an interpretation that avoids conflict, that interpretation should control. *Jackson Community College v Dep't of Treasury,* 241 Mich App 673, 681; 621 NW2d 707 (2000). The interpretation should give effect to each statute " 'without repugnancy, absurdity, or unreasonableness.' " *Livonia Hotel, LLC v City of Livonia,* 259 Mich App 116, 131; 673 NW2d 763 (2003), quoting *Michigan Humane Society v Natural Resources Comm,* 158 Mich App 393, 401; 404 NW2d 757 (1987). When two statutes conflict, the one that is more specific to the subject matter prevails over the more general statute. *Livonia Hotel, supra* at 131.

MCL 380.471a of the Revised School Code governs the nonrenewal of administrators' employment contracts. That provision provides in relevant part:

> A notification of nonrenewal of a contract of a person described in this section may be given only for a reason that is not arbitrary or capricious. The board shall not issue a notice of nonrenewal under this section unless the affected person has been provided with not less than 30 days' advance notice that the board is considering the nonrenewal together with a written statement of the reasons the board is considering the nonrenewal. *After the issuance of the written statement, but before the nonrenewal statement is issued, the affected person shall be given the opportunity to meet with not less than a majority of the board to discuss the reasons stated in the written statement. The meeting*

*shall be open to the public or a closed session as the affected
person elects under section 8 of the open meetings act, 1976
PA 267, MCL 15.268.* The failure to provide for a meeting
with the board or the finding of a court that the reason for
nonrenewal is arbitrary or capricious shall result in the
renewal of the affected person's contract for an additional
1-year period. This subsection does not apply to the non-
renewal of the contract of a superintendent of schools.
[MCL 380.471a(2)[1] (emphasis added).]

Under this provision, an administrator is entitled to
an opportunity to meet with not less than a majority of
the school board to discuss the reasons for nonrenewal.
The provision states that the meeting should be open to
the public or closed as the administrator elects under
§ 8 of the OMA. Section 8(a) of the OMA, MCL
15.268(a), provides that a "public body" may meet in a
closed session for only those purposes enumerated in
the statute, including

[t]o consider the dismissal, suspension, or disciplining of, or
to hear complaints or charges brought against, or to
consider a periodic personnel evaluation of, a public officer,
employee, staff member, or individual agent, if the named
person requests a closed hearing. A person requesting a
closed hearing may rescind the request at any time, in
which case the matter at issue shall be considered after the
rescission only in open sessions.

As part of the 1999 SRA, however, the Legislature
added subsection 4 to MCL 380.471a, which states,
"This section is subject to part 5a."[2] While *Random
House Webster's College Dictionary* (1997) does not
define the phrase "subject to," the pertinent definitions
of "subject" include "being under the domination, con-

---

[1] MCL 380.471a was recently amended by 2004 PA 303, effective
August 10, 2004. Subsection 2, relating to the nonrenewal of administra-
tors' employment contracts, became subsection 3.

[2] Pursuant to 2004 PA 303, subsection 4 became subsection 5.

trol, or influence of something (often [followed] by *to)*" and "dependent upon something ([usually followed] by *to)*: *His consent is subject to your approval.*" Furthermore, Black's Law Dictionary (6th ed), defines "subject to" as "[l]iable, subordinate, subservient, inferior, obedient to . . . ." According to these definitions, part 5a of the Revised School Code would seemingly take precedence over MCL 380.471a if the provisions contained in those sections conflict.

Part 5a of the Revised School Code, MCL 380.371 to 380.736, involves school reform boards. MCL 380.372 requires the mayor to appoint a school reform board, and MCL 380.374 requires the school reform board to appoint a CEO. Under MCL 380.373, the CEO essentially stands in the shoes of the former school board. That section provides in pertinent part:

> Upon appointment of a chief executive officer for a qualifying school district under section 374, all provisions of this act that would otherwise apply to the elected school board of the qualifying school district apply to the chief executive officer; *the chief executive officer immediately may exercise all the powers and duties otherwise vested by law in the elected school board* of the qualifying school district and in its secretary and treasurer, *and all additional powers and duties provided under this part; and the chief executive officer accedes to all the rights, duties, and obligations of the elected school board* of the qualifying school district. These powers, rights, duties, and obligations include, but are not limited to, all of the following:
>
> \* \* \*
>
> (b) *Rights and obligations under collective bargaining agreements and employment contracts entered into by the elected school board* . . . .
>
> \* \* \*

(e) *Rights and obligations under statute, rule, and
common law.* [MCL 380.373(4)[3] (emphasis added).]

Plaintiffs argue that because defendant stepped into
the shoes of the school board as MCL 380.373 directs, he
was obligated to follow all the provisions of the OMA,
including those providing for notice of the times, dates,
and locations of the meetings. It is undisputed that the
former school board would have had to follow all provi-
sions of the OMA. Defendant contends that because he is
not a "public body," he was not obligated to follow any
provisions of the OMA.

The OMA applies to public bodies. MCL 15.263
provides in relevant part:

> (1) All meetings of a public body shall be open to the
> public and shall be held in a place available to the general
> public. All persons shall be permitted to attend any meet-
> ing except as otherwise provided in this act. . . .
>
> (2) All decisions of a public body shall be made at a
> meeting open to the public.
>
> (3) All deliberations of a public body constituting a
> quorum of its members shall take place at a meeting open
> to the public except as provided in this section and sections
> 7 and 8.

MCL 15.262(a) defines "public body" as

> any state or local legislative or governing body, including a
> board, commission, committee, subcommittee, authority, or
> council, that is empowered by state constitution, statute,
> charter, ordinance, resolution, or rule to exercise govern-
> mental or proprietary authority or perform a governmental
> or proprietary function; a lessee of such a body performing
> an essential public purpose and function pursuant to the
> lease agreement; or the board of a nonprofit corporation
> formed by a city under section 4o of the home rule city act,
> 1909 PA 279, MCL 117.4o.

---

[3] Although MCL 380.373 was also recently amended by 2004 PA 303,
subsection 4 was not affected.

In *Herald Co v Bay City*, 463 Mich 111, 131; 614 NW2d 873 (2000), the Michigan Supreme Court determined that a city manager was not obligated to follow the OMA because he was not a "public body" within the meaning of that term. The Court stated that the term "public body" connotes a collective entity and that a single individual is not generally recognized as a "board," "commission," "committee," "subcommittee," "authority," or "council," terms that the Legislature chose to describe "public body." *Id.* at 129-130. The Court noted that the Legislature could have included individuals in its definition of "public body" in the OMA, just as it did in its definition of "public body" for purposes of the Freedom of Information Act. *Id.* at 130 n 11. The Court further recognized the infeasibility of requiring an individual to deliberate in an open meeting pursuant to MCL 15.263(3). *Id.* at 131. Thus, the Court held that an individual acting in his official capacity is not a "public body" for the purposes of the OMA. *Id.*

Under *Herald Co*, defendant is not a "public body" within the meaning of the OMA because he is an individual acting in his official capacity. Plaintiffs contend that *Herald Co* is inapplicable because MCL 380.373 specifically authorizes a CEO to exercise all powers and assume all duties of the former school board. Plaintiffs' interpretation, however, would render nugatory the definition of "public body" in the OMA. Plaintiffs essentially contend that MCL 380.373 prevails over the definition of "public body" in the OMA. When two statutes appear to conflict, they should be read together and reconciled, if possible. *World Book, supra* at 416. Reading the two statutes together, MCL 380.373 requires defendant to perform all the duties and obligations of the former school board, but because defendant is an individual and not a "public body"

within the meaning of the OMA, he is simply not able or required to carry out these functions at open meetings.

The above interpretation gives effect to the Legislature's direction in MCL 380.471a(4) that "[t]his section is subject to part 5a." MCL 380.471a(2) describes the process that a school board must follow when considering nonrenewal of an administrator's employment contract. Under MCL 380.471a(4), however, that provision is "subject to" part 5a, which authorizes the CEO, an individual, to perform the school board's functions. According proper meaning to the term "subject to," which may be inferred from the dictionary definition of "subject," the provisions of MCL 380.471a are dependent on or subordinate to part 5a. Thus, the Legislature intended that part 5a prevail over the provisions contained in MCL 380.471a. Any other interpretation would render nugatory the Legislature's directive that "[t]his section is subject to part 5a."

In any event, even if MCL 380.471a and part 5a could not be reconciled as discussed above, the statute more specific to the subject matter would control. *Livonia Hotel, supra* at 131. Part 5a is more specific to the subject matter at issue in this case. MCL 380.471a(2) involves the general nonrenewal process that occurs during the tenure of the elected school board. MCL 380.471a does not account for the particular circumstances of this case in which defendant took over the duties of the elected school board under the SRA. Those circumstances are provided for in part 5a. Accordingly, part 5a, the more specific statute, would govern. *Livonia Hotel, supra* at 131. Because the OMA does not apply to defendant, the trial court erred by granting plaintiffs summary disposition and denying defendant's motion for summary disposition under MCR 2.116(C)(8).

Defendant also challenges the trial court's decision to award plaintiffs costs and attorney fees. The imposition of attorney fees is mandatory upon a finding of a violation of the OMA. *Herald Co, Inc v Tax Tribunal,* 258 Mich App 78, 91-92; 669 NW2d 862 (2003). We review for clear error, however, a trial court's finding that the OMA was violated. A decision is clearly erroneous when the Court is left with a "definite and firm conviction that a mistake has been made." *Id.* at 91.

Because we have concluded that the OMA does not apply to defendant, the trial court erred in awarding plaintiffs costs and attorney fees.

Given our resolution of these issues, we need not address defendant's remaining issues on appeal.

We reverse the trial court order granting plaintiffs summary disposition and denying summary disposition for defendant. We also reverse the order granting plaintiffs attorney fees and costs.

Reversed.