SHEMBER v UNIVERSITY OF MICHIGAN MEDICAL CENTER

Docket No. 276515. Submitted June 11, 2008, at Lansing. Decided August 21, 2008, at 9:00 a.m. Leave to appeal sought.

Linda Shember brought a medical-malpractice action in the Washtenaw Circuit Court against the University of Michigan Medical Center, nine individual physicians, and others. The plaintiff mailed a notice of intent to file a claim on July 20, 2005, alleging that she had suffered paralysis and other injuries caused by the failure of health-care providers at defendant University of Michigan Hospital to timely and appropriately diagnose and treat her condition when she sought care in 2003, and that she had also suffered later injuries because of improper postoperative care. The plaintiff had amended her notice of intent on January 18, 2006, to add an allegation regarding a clinical visit in 2003 and to set forth the applicable standards of care more specifically. Two days later, the plaintiff brought the instant action. The individual defendants moved for summary disposition on the ground that the plaintiff's claims were barred by the statute of limitations, and also that her claim with respect to one of the defendants lacked an appropriate affidavit of merit. The plaintiff moved to amend her complaint to add other theories of liability and to allege that she had been unable to identify four of the defendants in her initial notice of intent because the defendants had fraudulently concealed their identities by withholding certain medical records. The court, David S. Swartz, J., dismissed with prejudice the plaintiff's claims against five of the physicians and denied her motion to amend with respect to the claim of fraudulent concealment, but allowed the parties to file briefs regarding the plaintiff's additional theories of liability concerning the remaining defendants. The defendants affiliated with the University of Michigan were dismissed without prejudice by stipulation. The court ultimately dismissed the four remaining individual defendants with prejudice on the ground that the statutory period of limitations had expired and denied the plaintiff's motions for reconsideration and to amend her complaint. The plaintiff appealed.

The Court of Appeals held:

1. With respect to the four defendants who were not named in the plaintiff's original notice of intent, the trial court correctly

ruled that there was no evidence of fraudulent concealment. The evidence did not support an inference that employees of the University of Michigan defendants had embarked on a course of action designed to prevent or hinder the plaintiff from identifying the individual physicians who might be liable for medical malpractice, and the plaintiff offered no evidence that she could not have timely accessed or obtained copies of the records through other means. Even if the summary-disposition motion had been properly considered under MCR 2.116(C)(7) rather than (C)(8), reversal would be unwarranted because the amendment would have been futile.

2. The claims against four of the individual defendants who were named in the plaintiff's original notice of intent were properly dismissed because the notice did not set forth sufficiently specific allegations of fact or standards of care. The defective notice of intent was not sufficient to toll the period of limitations under *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57 (2002), which held that the notice requirements of MCL 600.2912b must be met to toll the period of limitations under the plain language of MCL 600.5856. Although MCL 600.5856 was amended after *Roberts* was decided, the substantive requirement of the presuit-notice tolling provision was not changed by that amendment; therefore, *Roberts* remains binding precedent.

3. Although the court may have erred in dismissing with prejudice the claim against the internal-medicine specialist on the basis of the plaintiff's failure to file a conforming affidavit of merit, it reached the right result because the notice of intent was also deficient and therefore did not toll the period of limitations.

Affirmed.

WHITE, J., concurring in part and dissenting in part, agreed that dismissal with prejudice was appropriate with respect to seven of the nine individual defendants, but disagreed with respect to the two emergency-room physicians because the notice of intent, read in its entirety, stated a specific standard of care and set forth the specific actions required to comply with that standard. Because the first notice of intent tolled the period of limitations, the second notice of intent was timely; therefore, the case should be remanded for a determination whether the second notice of intent was sufficient to warrant a dismissal without prejudice.

NEGLIGENCE — MEDICAL MALPRACTICE — LIMITATION OF ACTIONS — NOTICES OF INTENT TO FILE SUIT.

The amendment of MCL 600.5856 did not alter the fact that the notice requirements of MCL 600.2912b must be met to toll the period of limitations for medical-malpractice actions (MCL 600.2912b; MCL 600.5856[c]).

*Mark Granzotto, P.C.* (by *Mark Granzotto*), and *Natalie C. Qandah, P.C.* (by *Natalie Qandah*), for Linda Shember.

*Foster, Swift, Collins & Smith, P.C.* (by *Richard C. Kraus*), for Pia M. Sundgren and others.

Before: MARKEY, P.J., and WHITE and WILDER, JJ.

MARKEY, P.J. In this medical malpractice action, plaintiff appeals by right the trial court's February 5, 2007, order granting summary disposition in favor of four individual defendants, Drs. Carol L. Bradford, Dale Ekbom, James A. Freer, and Paul DeFlorio. Plaintiff also challenges the trial court's earlier June 5, 2006, order dismissing her claims against the other five individual defendants, Drs. Pia M. Sundgren, Anthony D'Amico, Steven Kronick, John N. Shenk, and Steven Krafcik, and denying her motion to amend the complaint to allege fraudulent concealment. We affirm.

## I. BACKGROUND

On July 31, 2003, plaintiff underwent surgery at the University of Michigan Hospital to drain a cervical epidural abscess. She allegedly developed left hemiplegia before the surgery, which left her without the use of her left arm and leg. In a notice of intent to file a claim, MCL 600.2912b, mailed on July 20, 2005, plaintiff asserted that her condition was caused by the failure of health care providers to timely and appropriately diagnose and treat her condition on July 24 and 30, 2003, and that she suffered further injury because of improper postoperative care. The notice was addressed to the University of Michigan Hospitals & Health Centers, various unnamed persons, and 20 named physicians,

including five of the individual defendants, Drs. Bradford, Ekbom, Freer, DeFlorio, and Krafcik.

In an amended notice of intent, dated January 18, 2006, plaintiff modified the basis of her claims against the individual defendants in this case to allege more specific standards of care applicable to emergency physicians and nurses, the "radiologist/neuroradiologist," and "ENT consulting physicians," and added allegations regarding a July 28, 2003, clinical visit.

On January 20, 2006, plaintiff filed the instant action against the University of Michigan defendants and the nine individual defendants. In February 2006, the individual defendants moved for summary disposition under MCR 2.116(C)(7) and (10) on the grounds that plaintiff's claims were barred by the statute of limitations and that the claim against Dr. Krafcik lacked an appropriate affidavit of merit required by MCL 600.2912d. Before the hearing on the motion for summary disposition, plaintiff moved to amend her complaint pursuant to MCR 2.116(I)(5) and 2.118(A)(2) to add additional theories of liability and to allege fraudulent concealment. In a proposed amended complaint filed with the motion, plaintiff alleged that "defendants," by withholding certain medical records, fraudulently concealed the identity of the four individual defendants who were not named in her initial presuit notice of intent to file a claim.

Following a hearing on May 17, 2006, the trial court entered an order dated June 5, 2006, dismissing with prejudice plaintiff's claims against Drs. Sundgren, D'Amico, Kronick, Shenk, and Krafcik. Plaintiff's motion to amend her complaint to allege fraudulent concealment was also denied. The trial court allowed the parties to file supplemental briefs with respect to the remaining individual defendants and the additional theories of liability alleged in plaintiff's proposed

amended complaint. Plaintiff also filed a motion for reconsideration of the order denying her motion to amend her complaint to allege fraudulent concealment, asserting that she had additional evidence to support the claim.[1]

On February 5, 2007, the trial court issued an opinion and order dismissing the four remaining individual defendants, Drs. Bradford, Ekbom, Freer, and DeFlorio, with prejudice. Plaintiff's motions for reconsideration and to amend her complaint were also denied.

## II. STANDARD OF REVIEW

We review de novo a trial court's grant of summary disposition to determine if the moving party was entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Questions of statutory construction are also reviewed de novo. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). Summary disposition may be granted under MCR 2.116(C)(7) when a claim is barred because of a statute of limitations. The moving party may support the motion with affidavits, depositions, admissions, or other documentary evidence. *Maiden, supra* at 119. Such evidence is considered to the extent that the content or substance would be admissible as evidence. MCR 2.116(G)(6). The allegations in the complaint are accepted as true unless contradicted by the documentary evidence. *Maiden, supra* at 119. "If the pleadings or other documentary evidence reveal no genuine issues of material fact, the court must decide as a matter of law whether the claim is statutorily barred." *Holmes v Michigan Capital Med Ctr*, 242 Mich App 703, 706; 620 NW2d 319 (2000).

---

[1] The University of Michigan defendants were dismissed without prejudice pursuant to a stipulated order dated July 31, 2006.

We review a trial court's denial of a motion to amend a complaint for an abuse of discretion. *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). An abuse of discretion occurs when a trial court's decision falls outside the range of principled outcomes. *Woodard, supra* at 557. A motion to amend under MCR 2.118 should ordinarily be granted, but may be denied for the following particularized reasons: " '[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of the amendment, [and 5] futility . . . .' " *Sands Appliance Services, Inc v Wilson*, 463 Mich 231, 239-240; 615 NW2d 241 (2000), quoting *Ben P Fyke & Sons v Gunter Co*, 390 Mich 649, 656; 213 NW2d 134 (1973).

### III. MALPRACTICE CLAIMS AGAINST DRS. SUNDGREN, D'AMICO, KRONICK, AND SHENK

Because it concluded that the statutory period of limitations had expired, the trial court granted summary disposition in favor of Drs. Sundgren, D'Amico, Kronick, and Shenk, who were not named in plaintiff's initial notice of intent to file a claim. The trial court further determined that plaintiff had failed to demonstrate any reason for tolling the limitations period in spite of plaintiff's claim of fraudulent concealment or the initial or amended notice of intent to file a claim.

Initially, we note that this Court previously denied defendants' motion to strike the portion of plaintiff's brief relating to the earlier June 5, 2006, order. *Shember v Univ of Michigan Med Ctr*, unpublished order of the Court of Appeals, entered November 30, 2007 (Docket No. 276515). Further, plaintiff's failure to list each individual defendant as an appellee in the claim of

appeal, as required by MCR 7.204(D)(1), was not fatal to this Court's jurisdiction over the four individual defendants, who each received notice of the appeal. See *Kaufman & Payton, PC v Nikkila,* 200 Mich App 250, 258 n 1; 503 NW2d 728 (1993) (CONNOR, J., dissenting). Additionally, a party claiming an appeal of right from a final order is free to raise issues on appeal related to prior orders. See *Bonner v Chicago Title Ins Co,* 194 Mich App 462, 472; 487 NW2d 807 (1992). Therefore, appellate review of the trial court's decision dismissing these four individual defendants is not precluded.

Nonetheless, "[i]t is axiomatic that where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court." *Prince v MacDonald,* 237 Mich App 186, 197; 602 NW2d 834 (1999). An appellant may not leave it to this Court to discover and rationalize the basis of a claim. *Peterson Novelties, Inc v City of Berkley,* 259 Mich App 1, 14; 672 NW2d 351 (2003). Although this Court may overlook preservation requirements in certain circumstances, "a party's failure to brief an issue that necessarily must be reached precludes appellate relief." *City of Riverview v Sibley Limestone,* 270 Mich App 627, 638; 716 NW2d 615 (2006).

Here, plaintiff has not raised any issue challenging the trial court's determination that, absent a legally cognizable tolling event, the two-year limitations period in MCL 600.5805(6) expired before the complaint was filed on January 20, 2006; consequently, summary disposition of the malpractice claims against Drs. Sundgren, D'Amico, Kronick, and Shenk was proper under MCR 2.116(C)(7). Further, plaintiff does not argue that she may take advantage of the presuit notice tolling provision in MCL 600.5856 with respect to these individual defendants.

At best, plaintiff has presented an issue challenging the trial court's determination that there was no evidence of fraudulent concealment to toll the limitations period. But plaintiff incorrectly presents this issue solely as one relevant to whether she should have been allowed to amend her complaint to add a substantive claim for fraudulent concealment.

It is true that a plaintiff must allege in a complaint facts supporting fraudulent concealment in order to rely on the fraudulent concealment tolling provision.[2] *Sills v Oakland Gen Hosp*, 220 Mich App 303, 310; 559 NW2d 348 (1996); *Dunmore v Babaoff*, 149 Mich App 140, 146-147; 386 NW2d 154 (1985). But the fraudulent concealment tolling provision is not itself a substantive cause of action for which a plaintiff may recover damages from a tortfeasor.

Fraudulent concealment is recognized as a tolling event in MCL 600.5855. See *Sills, supra*; *Dunmore, supra*. Plaintiff is charged with the discovery of facts that with the exercise of reasonable diligence she ought to have discovered. *Meyer & Anna Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Institute,* 266 Mich App 39, 45-46 n 2; 698 NW2d 900 (2005). To prove fraudulent concealment, plaintiff must show that a person who is or may be liable for the claim engaged in some arrangement or contrivance of an

---

[2] MCL 600.5855 provides:

 If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

affirmative character that was designed to prevent subsequent discovery of the existence of the claim or the identity of the person liable for the claim. *Doe v Roman Catholic Archbishop*, 264 Mich App 632, 642-643; 692 NW2d 398 (2004); *Sills, supra* at 310. Plaintiff must specifically plead the acts or misrepresentations that comprised the fraudulent concealment and prove that they were designed to prevent subsequent discovery. *Phinney v Perlmutter*, 222 Mich App 513, 563; 564 NW2d 532 (1997); *Dunmore, supra* at 147.

Because tolling based on fraudulent concealment relates to the statute of limitations, it is appropriately reviewed under MCR 2.116(C)(7). *Meyer & Anna Prentis Family Foundation, Inc, supra* at 46 n 3. Therefore, it was appropriate for the trial court to consider the evidence the parties submitted when reviewing defendants' motion for summary disposition. MCR 2.116(G)(5).

The affidavits plaintiff and her counsel executed aver that they both attended a meeting on September 2, 2004, at the University of Michigan's risk management department and were provided with incomplete medical records at that time. Plaintiff's counsel averred, and documentary evidence confirmed, that an issue arose in February 2005 regarding whether it was necessary that plaintiff execute a release to authorize counsel's receipt of the records, but there was no evidence that plaintiff executed or timely provided the release.[3] And while plaintiff's counsel averred that she was unsuccessful in obtaining copies of additional records from the risk management department, plaintiff averred that she was

---

[3] We note that plaintiff submitted additional evidence with her motion for reconsideration of the trial court's denial of her motion to amend the complaint, but plaintiff does not challenge the trial court's decision to deny the motion for reconsideration.

able to obtain copies of the records in August 2005, by personally going to the University of Michigan's records department.

We must consider the evidence in the light most favorable to plaintiff. *Brennan v Edward D Jones & Co,* 245 Mich App 156, 157; 626 NW2d 917 (2001). In so doing, we agree with the trial court that there was no evidence of fraudulent concealment. Plaintiff was required to exercise reasonable diligence. *Meyer & Anna Prentis Family Foundation, Inc, supra* at 46 n 2. Assuming for purposes of review that the University of Michigan was or may be liable within the meaning of MCL 600.5855, plaintiff's counsel's inability to obtain medical records from the university's employees plainly suggested the need for some other course of action to either view or obtain copies of the records. The evidence did not support an inference that the employees had embarked on a course of action designed to prevent or hinder plaintiff's identifying the particular physicians who might be liable for medical malpractice. Further, plaintiff offered no evidence that she could not have, with reasonable diligence, timely accessed or obtained copies of the records through other means, such as when, according to plaintiff's affidavit, she personally went to the records department in August 2005 and obtained the records.

Because plaintiff's original complaint did not allege fraudulent concealment and because plaintiff failed to demonstrate any evidence showing a genuine issue of material fact regarding this issue, we uphold the trial court's grant of summary disposition under MCR 2.116(C)(7) in favor of Drs. Sundgren, D'Amico, Kronick, and Shenk. *Holmes, supra* at 706. Further, given the lack of evidence to support this tolling theory, the trial court did not abuse its discretion in denying

plaintiff's motion to amend the complaint to plead fraudulent concealment. Only where summary disposition is based on MCR 2.116(C)(8), (9), or (10) is a trial court required to give a party an opportunity to amend the complaint. MCR 2.116(I)(5); *Weymers, supra* at 658. Even then, the evidence before the trial court can be considered in determining if an amendment would be justified. MCR 2.116(I)(5); see also *Ormsby v Capital Welding, Inc,* 471 Mich 45, 52-60; 684 NW2d 320 (2004). Therefore, even if we were to treat this case as involving a motion under MCR 2.116(C)(8) instead of MCR 2.116(C)(7), we would not reverse because the evidence before the trial court when it decided the motion indicates that an amendment would have been futile. *Ormsby, supra* at 53, 60; *Dunmore, supra* at 147.

### IV. MALPRACTICE CLAIMS AGAINST DRS. BRADFORD, EKBOM, FREER, AND DeFLORIO

The trial court granted summary disposition in favor of Drs. Bradford, Ekbom, Freer, and DeFlorio on the ground that plaintiff's claims were barred by the statute of limitations. It determined that plaintiff could not take advantage of the presuit notice tolling provision in MCL 600.5856(c) because her initial notice of intent mailed on July 20, 2005, did not comply with the requirement of MCL 600.2912b(4)(b) that the notice identify the applicable standard of practice or care.

Although the trial court did not articulate the particular subrule of MCR 2.116 on which it relied, the individual defendants sought summary disposition under MCR 2.116(C)(7), which is appropriately applied to claims based on a statute of limitations. *Meyer & Anna Prentis Family Foundation, Inc, supra* at 46 n 3.

Plaintiff's principal argument is that the trial court erred in finding that her initial presuit notice of intent

failed to comply with MCL 600.2912b(4)(b). We disagree. Under *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 690-696; 684 NW2d 711 (2004) (*Roberts II*), a plaintiff must identify in a readily ascertainable manner all the specific information mandated by the statute regarding each particular professional or facility that is named in the notice. The notice is not required to be accurate in every respect. *Id.* at 691. But a plaintiff must "make good-faith averments that provide details that are *responsive* to the information sought by the statute and that are as *particularized* as is consistent with the early notice stage of the proceedings." *Id.* at 701 (emphasis in original); see also *Boodt v Borgess Med Ctr*, 481 Mich 558, 560-561; 751 NW2d 44 (2008). The standard applicable to one defendant is not necessarily the standard applicable to another defendant. *Roberts II, supra* at 694 n 11. The degree of specificity must allow potential defendants to understand the nature of the claims against them. *Id.* at 701. A plaintiff must only " 'specify what it is that she is *claiming* under each of the enumerated categories in § 2912b(4).' " *Boodt, supra* at 561, quoting *Roberts II, supra* at 701 (emphasis in original).

In this case, plaintiff's notice was addressed to the University of Michigan Hospitals & Health Centers; 20 individuals from a variety of departments, including emergency medicine, physical medicine and rehabilitation, otolaryngology, neurosurgery, and radiology; and unnamed individuals. The only factual allegation directed at Dr. Bradford, an alleged member of the Department of Otolaryngology, was that a "second esophageal dilation was performed on June 8, 2003." Plaintiff also alleged a different esophageal dilation by Dr. Rontal, also an alleged member of the Department of Otolaryngology, that resulted in a torn esophagus. The standard of care alleged in the notice did not

address the June 8 dilation, but rather contained broad allegations regarding the alleged failure of health care providers to timely and appropriately diagnose and treat plaintiff's condition in the emergency room on July 24 and 30, 2003, broad allegations regarding postoperative care, and a general allegation that the "applicable standard of care required the Health Care providers to avoid perforation during an esophageal dilation; timely and appropriately appreciate Claimant's complaints and symptoms, timely and appropriately diagnosis and treat Claimant's condition in the ER which would include, but is not limited to, ordering appropriate films in an emergent and STAT manner . . . ."

Without a more exacting statement of the standard of care applicable to an otolaryngologist, who previously performed an esophageal dilation as alleged in the notice, Dr. Bradford would be left to guess at the basis of plaintiff's claim. Examined in its entirety, the notice was insufficient to inform Dr. Bradford of the standard of care applicable to her circumstances, as required by MCL 600.2912b(4)(b). Cf. *Gawlik v Rengachary*, 270 Mich App 1, 10-11; 714 NW2d 386 (2006) (notice of intent inadequate where it generally encompassed all caregivers and failed to explain what the physician should have done).

Plaintiff's claim with respect to Dr. Ekbom, also an alleged member of the Department of Otolaryngology, is even vaguer, because the notice does not contain any particular factual allegations against him. Plaintiff's claims against Dr. Freer, an alleged member of the Department of Emergency Medicine, similarly contain no specific factual allegations. Viewed in conjunction with the standard of care that is generally directed at the health care providers mentioned in the notice, the

notice is inadequate to satisfy MCL 600.2912b(4)(b) with respect to these physicians.

The factual basis of plaintiff's claim with respect to Dr. DeFlorio, an alleged member of the "Department of Emergency Department," is more detailed. The notice indicates that it relates to the events of July 30, 2003, in the emergency room:

> Claimant returned to the Emergency Room on July 30, 2003 at approximately 1:00 a.m. and again presented with extreme pain in her neck and shoulders. Claimant was kept in the ER for approximately 17 hours during which she had experienced progressive neurological deficit for which nothing was done. Due to incomplete records, *it is believed that Dr. DeFlorio attempted to spinal tap 2-3 times at some point during Claimant's 17 hours in the ER for suspected meningitis, for which he failed each time and left Claimant to excruciating pain. Dr. DeFlorio then indicated that he was "needed elsewhere" and left Claimant to continue to sit in the ER while Claimant continued to experience progressive neurological deficit for which nothing was done.* Specifically, Plaintiff was losing mobility and control of her left arm which she had control of 17 hours ago, prior to her walking into the ER of the University of Michigan Hospital. Claimant repeatedly advised her treaters of her increasing inability to move her left arm throughout her course in the ER. An MRI was finally taken sometime approximately late evening on July 30, 2003, which showed massive infection. . . . The next day, on July 31, 2003, Dr. Frank LaMarca performed a posterior cervical fusion-vertex. [Emphasis added.]

Further, the alleged standard of care contained some specific allegations directed at the events of July 30, 2003:

> The Health Care Providers should have also timely and appropriately diagnosed and treated Claimant's condition upon her second presentation to the ER on July 30, 2003 wherein she had the same complaints of extreme and unbearable pain in her neck and shoulders and was also

experiencing progressive neurological deficit over the course of approximately 17 hours. The applicable standard of care required the Health Care providers to . . . timely and appropriately diagnose and treat Claimant's condition in the ER which would include, but is not limited to, ordering appropriate film in an emergent or STAT manner, order timely CBCs, order timely or emergent/STAT consults including neurosurgery for a patient who was experiencing progressive neurological deficit, obtain Claimant's past medical history and consult known treaters of Claimant in a timely fashion to understand and appreciate Claimant's past medical history, immediately order a STAT MRI and immediately take the Claimant to the operating room given the presence of massive infection and cord compression.

The alleged manner in which the standard of care was breached also refers to the events on July 30, 2003, and, in particular, alleges that there was a failure to "to timely obtain and review results of CBC, MRI, neurosurgery consult, failure to be admitted or triaged while in the ER instead of waiting 17 hours in an ER cubical [sic] during which nothing was done regarding Claimant's progressive neurological deficit . . . ."

The problem with the notice is that it does not indicate that Dr. DeFlorio was the only physician to see plaintiff during her 17-hour stay in the emergency room or that he became involved in her care for any purpose other than the attempted spinal taps. To the contrary, plaintiff alleged that there were other unidentified "treaters." In addition, the alleged standard of care is not particularized to Dr. DeFlorio's circumstances, or even emergency physicians in general, but rather is directed at the "health care providers" mentioned in the notice. The notice suggests that the same list of actions would apply to all health care providers who had contact with plaintiff in the emergency room.

On the other hand, Dr. DeFlorio, as a medical professional, would presumably have ready access to information about the case after being provided with notice of the claim against him. Thus, it would be easy for him to comprehend the factual nature of the impending lawsuit. Further, while the unique standard applicable to a particular defendant is an element of a malpractice action, the presuit notice need not contain a perfect rendition of the applicable standard of care. *Roberts II*, *supra* at 692-694.

Examining the notice in its entirety, we conclude that no guesswork is necessary for Dr. DeFlorio to appreciate that the basis of the claim against him was that he should not have left plaintiff sitting untreated and unattended in the emergency room; he should have taken some action other than the attempted spinal taps. But without any particularization of which listed actions in the alleged standard of care for health care providers apply to Dr. DeFlorio, the notice is insufficient to inform him of what he did not do or should have done to comply with the applicable standard of care. Because the notice examined in its entirety does not comport with plaintiff's responsibility to make a good-faith averment of all the requirements of the statute pertaining to Dr. DeFlorio, we uphold the trial court's determination that plaintiff failed to satisfy MCL 600.2912b(4)(b).

Next, plaintiff claims that a defect in the notice required under MCL 600.2912b does not prevent her from taking advantage of the presuit notice tolling provision in MCL 600.5856. Although plaintiff failed to present this legal issue to the trial court, we will consider plaintiff's argument because the trial court specifically held that a notice that does not comply with the requirements set forth in MCL 600.2912b(4) does

not toll the period of limitations under MCL 600.5856(c). This Court may overlook preservation requirements to consider an issue that is necessary to a proper resolution of the case. *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 640; 734 NW2d 217 (2007).

First, we note that the trial court relied on MCL 600.5856(c) as amended by 2004 PA 87, effective April 22, 2004. This statute was amended after the alleged malpractice in this case. As amended, MCL 600.5856(c) provides that the period of limitations is tolled

> [a]t the time notice is given in compliance with the applicable notice period under [MCL 600.2912b], if during that period a claim would be barred by the statute of limitations or repose; but in this case, the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given.

Conversely, at the time of the alleged malpractice in this case, former MCL 600.5856(d) provided that the period of limitations is tolled

> [i]f, during the applicable notice period under [MCL 600.2912b], a claim would be barred by the statute of limitations or repose, for not longer than a number of days equal to the number of days in the applicable notice period after the date notice is given in compliance with [MCL 600.2912b].

In general, amendments to statutes of limitations apply prospectively. See *Davis v State Employees' Retirement Bd*, 272 Mich App 151, 155; 725 NW2d 56 (2006). But there is no vested right in the running of a period of limitations, except when it has completely run and the action is barred. *In re Straight's Estate*, 329 Mich 319, 325; 45 NW2d 300 (1951). Here, enacting § 1 of the amendatory act provides that it applies to civil

actions filed after April 22, 2004, unless the period of limitations expired before that date. Thus, the amended statute applies to this case.

Nonetheless, we find no merit to plaintiff's argument that the amended statute substantively changed the effect of the presuit notice tolling provision. An unambiguous statute is enforced according to its plain language. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 66; 642 NW2d 663 (2002) (*Roberts I*). 2004 PA 87 did not change the substance of the presuit notice tolling provision.

Plaintiff's reliance on *Kirkaldy v Rim*, 478 Mich 581; 734 NW2d 201 (2007), as support for how the presuit notice tolling provision in MCL 600.5856(c) should operate, is misplaced. The issue in *Kirkaldy* involved application of the tolling provision in MCL 600.5856(a) under the former version of the statute, before it was amended by 2004 PA 87. Under MCL 600.5856(a), tolling commences "[a]t the time the complaint is filed and a copy of the summons and complaint are served on the defendant." See *Kirkaldy, supra* at 584 n 4.[4] Viewed in conjunction with the requirement in MCL 600.2912d that the complaint be accompanied by an affidavit of merit, our Supreme Court concluded that the "period of limitations is tolled when a complaint and affidavit of merit are filed and served on the defendant" and that the tolling continues, even if the affidavit is defective, until the presumptive validity of the affidavit is successfully challenged in a subsequent judicial proceeding. *Kirkaldy, supra* at 585-586.

This case is distinguishable from *Kirkaldy* because in that case the plaintiff had presumably filed a notice of

---

[4] The amended version of MCL 600.5856(a) provides that tolling commences "[a]t the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules."

intent in compliance with MCL 600.2912b, and the presuit notice tolling provision in MCL 600.5856(c) was not at issue. See *Boodt, supra* at 564. And while this Court recently concluded in *Potter v McLeary (On Remand)*, 278 Mich App 279, 286; 748 NW2d 599 (2008), that the Supreme Court's treatment of deficient affidavits of merit in *Kirkaldy* applies by analogy to deficient notices of intent under MCL 600.2912b so as to permit a notice of intent to toll the period of limitations unless and until the notice is successfully challenged in a judicial proceeding, this Court did not consider the specific presuit notice tolling provision in MCL 600.5856(c). Further, this Court did not apply our Supreme Court's holding in *Roberts I, supra* at 67, that compliance with MCL 600.2912b is required to toll the period of limitations because the plain language of MCL 600.5856 requires the plaintiff to comply with the provisions of MCL 600.2912b in order to toll the limitations period. Although MCL 600.5856 was amended after our Supreme Court's decision, because the substantive requirement of the presuit notice tolling provision was not changed, the holding in *Roberts I* that compliance with MCL 600.2912b is required to toll the period of limitations remains valid, binding law.[5]

We are bound to follow a published opinion of this Court establishing a rule of law that our Supreme Court or a special panel of this Court has not reversed or modified. MCR 7.215(J)(1). But under the doctrine of stare decisis, this Court must follow decisions of our Supreme Court. *People v Hall*, 249 Mich App 262, 270;

---

[5] As a practical matter, we note that MCL 600.2912b establishes an interval of time in which a potential plaintiff is not permitted to sue for medical malpractice. If the interval ends before the period of limitations expires, the presuit notice tolling provision in MCL 600.5856 is of no consequence. See *Mayberry v Gen Orthopedics, PC*, 474 Mich 1, 8-9; 704 NW2d 69 (2005).

643 NW2d 253 (2002), remanded on other grounds 467 Mich 888 (2002). "[I]t is the Supreme Court's obligation to overrule or modify case law if it becomes obsolete, and until this Court takes such action, the Court of Appeals and all lower courts are bound by that authority." *Boyd v W G Wade Shows,* 443 Mich 515, 523; 505 NW2d 544 (1993), overruled on other grounds by *Karaczewski v Farbman Stein & Co,* 478 Mich 28 (2007). We conclude that *Roberts I* remains valid precedent. See *Boodt, supra* at 561-563. Consequently, we reject plaintiff's claim that the defective notice of intent was sufficient to toll the period of limitations with respect to Drs. Bradford, Ekbom, Freer, and DeFlorio.

We also reject plaintiff's claim that she should have been afforded an opportunity to file an amended notice of intent to correct any deficiency in the notice of intent mailed on July 20, 2005, pursuant to MCL 600.2301. Plaintiff has failed to establish that she preserved this issue by presenting it to the trial court. See *Peterman v Dep't of Natural Resources,* 446 Mich 177, 183; 521 NW2d 499 (1994).

Even if we were to overlook this deficiency on appeal, *Laurel Woods Apartments, supra* at 640, we would reject plaintiff's argument because MCL 600.2301 has no application to the presuit notice required under MCL 600.2912b. *Boodt, supra* at 563 n 4. Dismissal with prejudice is an appropriate remedy when a period of limitations has expired. See *Scarsella v Pollak,* 461 Mich 547, 549; 607 NW2d 711 (2000). Prejudice to a defendant is not a factor in applying the relevant medical malpractice statutes. See *Burton v Reed City Hosp Corp,* 471 Mich 745, 753; 691 NW2d 424 (2005).

Because the Legislature has not authorized retroactive amendment of the presuit notice to toll the period of limitations, plaintiff has not shown any error in the

trial court's failure to afford her an opportunity to amend the notice. Thus, plaintiff has not demonstrated any basis for disturbing the trial court's determination that her malpractice claims against Drs. Bradford, Ekbom, Freer, and DeFlorio were time-barred. We affirm the trial court's decision granting their motion for summary disposition and dismissing plaintiff's claims against them with prejudice.

### V. MALPRACTICE CLAIM AGAINST DR. KRAFCIK

The trial court's grant of summary disposition in favor of Dr. Krafcik was based on plaintiff's failure to file an affidavit of merit with the complaint that complied with MCL 600.2912d. Specifically, plaintiff failed to file an affidavit comporting with Dr. Krafcik's proper board certification as an internal medicine specialist.

On appeal, plaintiff does not challenge the trial court's ruling. Plaintiff only asserts that the trial court erred in dismissing her claim with prejudice on the basis of *Kirkaldy*. Although we find merit to plaintiff's argument, we will not reverse a trial court's decision if the right result was reached, albeit for the wrong reason. *Netter v Bowman*, 272 Mich App 289, 308; 725 NW2d 353 (2006).

Here, the same deficiency in the July 20, 2005, presuit notice that exists with respect to Drs. Bradford, Ekbom, Freer, and DeFlorio also exists with respect to Dr. Krafcik. The only allegation in the notice with respect to Dr. Krafcik was that he was a member of the Department of Emergency Medicine. The notice was insufficient to toll the period of limitations under MCL 600.5856(c). As with plaintiff's claims against Drs. Bradford, Ekbom, Freer, and DeFlorio, dismissal with prejudice was appropriate because the period of limitations had expired.

We affirm.

WILDER, J., concurred.

WHITE, J. (*concurring in part and dissenting in part*). I agree that the circuit court did not err by denying plaintiff's motion to amend her complaint to allege fraudulent concealment. Although amendment normally should be permitted, and the factual support then tested by summary disposition, in the instant case plaintiff provided the court, through her attorney's affidavit, with the factual basis for her claim of fraudulent concealment, and the court did not err in rejecting that basis as inadequate. Thus, I agree with the affirmance with respect to the defendants first identified by name in the amended notice of intent (NOI). I also agree that the NOI is insufficient with respect to Doctors Bradford and Ekbom, the otolaryngologists.

I disagree with respect to Doctors Freer and DeFlorio, the emergency-room physicians. Read in its entirety, the NOI sufficiently states that the emergency-room doctors violated the standard of care by failing to order appropriate films in an emergent or stat manner, order timely complete blood counts, order timely or emergent/stat consultations, including neurosurgery in view of plaintiff's progressive neurological deficit, obtain plaintiff's past medical history and consult her treaters, and order a stat magnetic resonance imaging and immediately take plaintiff to surgery given the presence of massive infection and cord compression.

The claimed deficiency in the NOI is its failure to specifically state the standard of care applicable to each defendant. The NOI does, however, state a specific standard of care. In contrast to the tautological statement involved in *Roberts v Mecosta Co Gen Hosp (After*

*Remand),* 470 Mich 679; 684 NW2d 711 (2004)
—specifically, that the standard of care required that
the health care professionals render competent ad-
vice and assistance in the care and treatment of the
plaintiff and render the same in accordance with the
standard of care—the NOI here set forth the specific
actions required to comply with the standard of care.
While the NOI referred to "Health Care Profession-
als" rather than to emergency-room physicians, the
statement of facts, read together with the statement
of the applicable standard of care, sufficiently identi-
fies the standard applicable to the emergency-room
physicians.

I agree with plaintiff that, under the amended
version of MCL 600.5856(c), giving notice in compli-
ance within the applicable notice period under MCL
600.2912b operates to toll the period of limitations if
the claim would be barred during that period. How-
ever, § 5856(c) expressly provides that the period of
limitations is tolled for a period not longer than the
number of days remaining in the notice period.
Hence, plaintiff makes the additional argument that
the filing of the complaint and affidavits of merit
further tolled the running of the period of limitations
under § 5856(a) and *Kirkaldy v Rim,* 478 Mich 581;
734 NW2d 201 (2007), until the claim was dismissed,
and that the dismissal should have been without
prejudice.

In *Boodt v Borgess Med Ctr,* 481 Mich 558; 751 NW2d
44 (2008), decided after this case was submitted, our
Supreme Court declined to apply *Kirkaldy* in the con-
text of a defective NOI and rejected the argument that
the filing of a complaint and affidavit of merit after
giving a defective NOI tolls the period of limitations
under § 5856(a). However, *Boodt* is distinguishable be-
cause in the instant case plaintiffs filed an amended

NOI[1] within the statutory limitations period.[2] To be sure, because the complaint was filed just days after the amended NOI was sent, it was premature. However, the remedy for this is dismissal without prejudice. *Dorris v Detroit Osteopathic Hosp*, 460 Mich 26; 594 NW2d 455 (1999). Thus, because the first NOI tolled the limitations period, the second NOI was timely; if the second NOI was sufficient, the action was timely but premature, and the dismissal should have been without prejudice, notwithstanding *Boodt*.[3] I would remand for determination whether the amended NOI was sufficient.[4]

---

[1] The first amended NOI, sent January 18, 2005, was far more detailed and specific than the original NOI.

[2] The original NOI was sent with at least six days remaining in the statutory limitations period and thus, even if inadequate, under the amended tolling provision of § 5856(c), it tolled the period of limitations for the time remaining in the notice period. The amended NOI was sent 182 days later and was thus sent within the statutory limitations period.

[3] Section 2912b(6) is not implicated because we are not here concerned with tacking.

[4] The amended NOI cannot under any circumstances save the action against the doctors first named in it because the original NOI did not toll the limitations period with respect to them.